JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney
JOANN M. SWANSON (CABN 88143)
Chief, Civil Division
NEILL T. TSENG (CABN 220348)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7155
   FAX: (415) 436-6748
   neill.tseng@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RODOLFO VELASQUEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROL A. CROTEAU, Manager Personnel Services, and UNITED STATES POSTAL SERVICE,<br><br>    Defendants. | No. C 08-02520 JSW<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER<br><br>Date: May 23, 2008<br>Time: 9:00 a.m.<br>Honorable Jeffrey S. White |

## I. INTRODUCTION

This case involves a plaintiff, Rodolfo Velasquez ("Velasquez"), who erroneously believes that he is in an assigned, or bid position, which is essentially a permanent position, when he is actually in an unassigned position. In April 2008, Velasquez was informed that his position was being eliminated pursuant to a district-wide downsizing, and was advised to bid on available vacant positions or else be assigned to any positions remaining after all other choices had been exhausted. Velasquez did not bid, and therefore was assigned to be a mail processing clerk effective May 24, 2008. Velasquez was also advised that he should request a reasonable accommodation for any medical restrictions by submitting a form to the District Reasonable Accommodation Committee (the "DRAC"). Instead of doing so, or filing any sort of administrative grievance, Velasquez went straight to this Court and filed an application for a

temporary restraining order (a "TRO"). The application should be denied because Velasquez has no likelihood of success on the merits, and has demonstrated no threat of irreparable harm.

## II. ISSUE TO BE DETERMINED

Whether Plaintiff's *Ex Parte* Application for a Temporary Restraining Order should be denied.

## III. STATEMENT OF FACTS

*Pro se* Plaintiff Rodolfo Velasquez ("Velasquez") has been an unassigned Mail Processing Clerk since beginning full-time employment with the United State Postal Service (the "USPS") in 1984, and most recently, before being assigned to the position at issue in this TRO, he was an unassigned Mail Processing Clerk, level PS-05, in the San Francisco Processing and Distribution Center. Decl. of Carol A. Croteau ("Croteau Decl.") ¶ 4. By "unassigned," that means Velasquez did not have a permanent position but had the right to bid on assigned positions. Croteau Decl. ¶ 3. Employees in assigned, or bid, positions, have a permanent position unless the position is changed, abolished, or downsized. Croteau Decl. ¶ 3. Although the USPS has advised Velasquez several times over the years to bid on positions, see Compl. at Exs. 2, 4, 5, he has never done so, Croteau Decl. ¶ 5.

On August 7, 2007, the San Francisco district began a downsizing pursuant to Article 12 of the Agreement Between the United States Postal Service and American Postal Workers Union, AFL-CIO (the "2006 National Agreement"). Croteau Decl. ¶ 6; Ex. A at 56-70. Pursuant to that downsizing, the USPS sent Velasquez a letter dated April 15, 2008, requiring him to bid on positions by May 1, 2008, or else be assigned to any of the available positions remaining after all the choices had been exhausted, pursuant to Article 37, Section 4 of the 2006 National Agreement. Croteau Decl. ¶ 7; Ex. B. Sixty-one other unassigned employees received a similar notice. Croteau Decl. ¶ 8; Ex. C.

Velasquez did not bid on a position and therefore was assigned effective May 24, 2008, to the job of Mail Processing Clerk, at the same PS-05 level, at the North Peninsula Delivery and Distribution Center in Burlingame, California, in accordance with Article 37.4.C.5 of the 2006 National Agreement. Croteau Decl. ¶ 9; Exs. A at 193-94, D, E. Via letter dated April 28, 2008,

Velasquez was also notified that he should submit a reasonable accommodation form, which was enclosed, to the DRAC with respect to any medical restrictions. Croteau Decl. ¶ 11; Ex. F. Velasquez failed to do so. Croteau Decl. ¶ 12.

Instead, he filed a complaint (Docket #1) in this action on May 19, 2008, naming as defendants "Carol A. Croteau, Manager Personnel Services," as well as the USPS. Velasquez filed the same day an Ex Parte Application for Order Shortening Time for Hearing on Plaintiff's Motion for Temporary Restraining Order and Restraining Injunction Should Not Issue (the "TRO Application") (Docket #3).[1] In his complaint, Velasquez alleges that he "is an individual with severe disabilities on his locomotive lower body aiding himself with crutches to ambulate and holding a job with the Defendant United States Postal Service since October 3, 1983." Compl. ¶ 1. In his TRO Application, Velasquez "alleges that both Defendants violated his civil rights guaranteed by the provisions of the American with Disability Act and the labor agreement between the American Postal Workers Union, by arbitrarily removing him from his job bid position, and assigning him arbitrarily to a position that he cannot perform physically." TRO Application at 2.

The USPS has construed the complaint and TRO Application with supporting declaration as a constructive request to the DRAC for a reasonable accommodation, and has scheduled a meeting for Velasquez on May 28, 2008, at 10:30 a.m. Croteau Decl. ¶ 13. Velasquez will not be required to perform any duties outside his current medical restrictions until the DRAC has made a ruling, and will continue to receive regular pay in the meantime. Croteau Decl. ¶ 13.

## IV. LEGAL STANDARD

---

[1] On May 20, 2008, the Court noted that Velasquez had "filed an *ex parte* application for a temporary restraining order" and ordered Defendants to "file an opposition to Plaintiff's application by no later than 10:00 a.m on May 22, 2008." Order Setting Hearing and Briefing Schedule on Pl.'s Application for TRO (Docket #6). According to PACER, Velasquez does not appear to have filed an application for a TRO separate from his application to shorten time for hearing, and Defendants were not served with a separate application for a TRO. Instead, Defendants construe his application for a TRO to be part of his Ex Parte Application for Order Shortening Time for Hearing on Plaintiff's Motion for Temporary Restraining Order and Restraining Injunction Should Not Issue.

DEFS.' OPP. TO PL.'S *EX PARTE* APPLICATION FOR A TRO
C 08-02520 JSW                                    3

In <u>Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.</u>, 887 F. Supp. 1320 (N.D. Cal. 1995), this Court set forth the standard for obtaining a TRO as follows:

> The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. In the Ninth Circuit, a district court may issue a preliminary injunction when the moving party demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardship tips sharply in its favor. [Citations omitted.]

<u>Id.</u> at 1323. The <u>Lockheed</u> court explained, "'These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases.'" <u>Id.</u> (citation omitted). "However, although the degree of irreparable harm may be low if the probability of success on the merits is high, the moving party must in any case 'demonstrate a significant threat of irreparable injury.'" <u>Id.</u> (citation omitted).

## V.  ARGUMENT

The TRO Application should be denied because Velasquez has no likelihood of success on the merits and has demonstrated no threat of irreparable injury.

### A.  VELASQUEZ HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.

As a threshold matter, a party seeking injunctive relief in federal court must satisfy its burden of establishing that the Court has subject matter jurisdiction. <u>See Federal Trade Comm'n v. H.N. Singer, Inc.</u>, 668 F.2d 1107, 1109 (9th Cir. 1982). Velasquez has no likelihood of success on the merits because the Court lacks subject matter jurisdiction over any claims under the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, or the Federal Tort Claims Act (the "FTCA"), because Velasquez has failed to state a contempt claim, and because there has been no violation of the 2006 National Agreement.

#### 1.  The Court Lacks Jurisdiction Under the ADA and Velasquez Has Not Exhausted Administrative Remedies Under the Rehabilitation Act.

Velasquez's TRO Application appears to be based primarily on an alleged violation of the ADA. <u>See</u> TRO Application at 2-3; <u>see also</u> Compl. § VI. However, the ADA is unavailable to Velasquez as a federal employee because "[t]he ADA explicitly exempts the federal government from coverage. Section 12111(5)(B)(I) specifies that the term 'employer' as used in the ADA

does not include 'the United States government, a corporation wholly owned by the government of the United States, or an Indian tribe.'" Bolden v. Ashcroft, 515 F. Supp. 2d 127, 137 (D.D.C. 2007) (citing 42 U.S.C. § 12111(5)(B)(I)).

Instead, Velasquez must proceed under the Rehabilitation Act. As the Court in Jordan v. Evans, 404 F. Supp. 2d 28, 30 (D.D.C. 2005), explained:

> [A] federal employee has no remedy for employment discrimination under the ADA. Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998). Of course, a federal employee is not without recourse. Indeed, the Rehabilitation Act provides a remedy, in fact the exclusive remedy, for a federal employee's disability discrimination claim if the employee first exhausts her administrative remedies. [Citations and footnote omitted.]

See also Boyd v. United States Postal Serv., 752 F.2d 410, 413 (9th Cir. 1985) (holding that section 501 of the Rehabilitation Act is the exclusive remedy for employment discrimination by a federal agency on the basis of handicap).

Even if the Court were to construe Velasquez's claim as arising under the Rehabilitation Act, it would be without jurisdiction to hear the claim. A plaintiff must first exhaust administrative remedies before pursuing a Rehabilitation Act claim in district court. See Leong v. Potter, 347 F.3d 1117, 1121-22 (9th Cir. 2003); Leorna v. United States Dept. of State, 105 F.3d 548, 550 (9th Cir. 1997). Velasquez has failed to do so. Decl. of Robert E. O'Connell ¶¶ 3-5. As a result, this Court is without jurisdiction to hear any claim that may arise under the Rehabilitation Act. See Leong, 347 F.3d at 1122 (holding that "substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite").

### 2. The Court Lacks Jurisdiction Over Any Claim Based on Misrepresentation or Deceit.

Velasquez's complaint also contains a claim for misrepresentation and deceit. See Compl. § VII. However, the TRO Application (and supporting declaration) does not reference this claim and appears to be based primarily on the ADA claim and on an alleged violation of the 2006 National Agreement. See TRO Application at 2-3. To the extent, if any, that the TRO Application is based on the misrepresentation or deceit claim, there is no likelihood of success because the Court lacks subject matter jurisdiction over that claim.

#### a. Sovereign Immunity Bars the Claim.

The federal government enjoys immunity from suit "except to the extent that it has unequivocally consented to litigation against itself." LaBarge v. County of Mariposa, 798 F.2d 364, 366 (9th Cir. 1986). The FTCA acts as a limited waiver of this sovereign immunity for tort claims. Cadwalder v. United States, 45 F.3d 297, 300 (9th Cir. 1995). In alleged torts committed by employees of the United States in the scope of their employment, the FTCA is the exclusive remedy against the United States. 28 U.S.C. § 2679(b)(1). Here, Velasquez has clearly sued Croteau in the scope of her employment, naming her in the caption of the complaint as "Carol A. Croteau, Manager Personnel Services."

Velasquez's misrepresentation and deceit claim is barred by sovereign immunity, as there is a statutory exception to the FTCA's waiver of sovereign immunity for misrepresentation and deceit. See 28 U.S.C. § 2680(h). That statutory exception deprives the Court of jurisdiction over Velasquez's claim. See Mundy v. United States, 983 F.2d 950, 952 (9th Cir. 1993) ("When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case.").

    **b.**  **Velasquez Has Not Exhausted Administrative Remedies.**

Even if Velasquez's misrepresentation and deceit claim was not barred by sovereign immunity, the FTCA requires a plaintiff to submit an administrative claim before filing suit in federal court:

> In a claim for damages against the United States, an independent cause of action must first be submitted for administrative review before that claim can be filed in federal court. See 28 U.S.C. § 2675(a). Where such a claim is not first presented to the appropriate agency, the district court, pursuant to Federal Rule of Civil Procedure 12(b)(1), must dismiss the action for lack of subject matter jurisdiction. See McNeil v. United States, 508 U.S. 106 [parallel citations omitted] (1993).

Goodman v. United States, 298 F.3d 1048, 1054-55 (9th Cir. 2002).

Velasquez has not submitted an administrative claim regarding the misrepresentation and deceit claim. Decl. of Linda K. Crump ¶¶ 4, 6. Thus, the Court lacks jurisdiction over that claim.

    **3.**  **The Complaint Fails to State a Contempt Claim.**

In his complaint at section IX, but not mentioned in the TRO Application (or supporting

declaration), is an allegation that Defendants are acting in contempt of court.  Velasquez admits, however, that "Plaintiff at the filing of this claim did not submit more information of said lawsuit other than mention it . . . and he has not time at this time to provide more details of the mentioned lawsuit adjudged in this Court."  Compl. ¶ 35.  Defendant is not aware of which lawsuit Velasquez is referring to, and this vague "mention" of a claim without any details fails to satisfy Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

Moreover, a check of PACER reveals that Velasquez has filed four previous claims against the USPS in this Court (95-1579 CW, 92-3079 BAC, 99-3789 MJJ, and 92-5006 BZ).  It appears form a quick browse of the docket sheets in those actions that all of them were dismissed.  See 95-1579 CW (Docket #29, 32); 92-3079 BAC (Docket #42, 56, 61), 99-3789 MJJ (Docket #13, 16), 92-5006 BZ (Docket #104).

**4.    Defendants Have Complied with the 2006 National Agreement.**

Velasquez has not alleged in his complaint that Defendants violated the 2006 National Agreement.  However, he suggests this in the TRO Application at 2.  As the claim is not contained in the complaint, this argument should be disregarded for failing to meet the requirements of notice pleading under Rule 8(a)(2).

To the extent the Court considers this claim, it is without merit and has no likelihood of success.  Velasquez does not assert which parts of the 2006 National Agreement have been violated.  In fact, none of them have been violated with respect to him.  The downsizing is in accord with Article 12.5.C.5 of the 2006 National Agreement, which sets forth procedures for a reduction in the number of employees in an installation other than by attrition.  See Ex. A at 64-69.  Velasquez was notified to bid on positions by May 1, 2008, or else be assigned to any of the available positions remaining after all the choices had been exhausted.  Croteau Decl. ¶ 7; Ex. B.  This bidding procedure for unassigned employees is in accordance with Article 37.4 of the 2006 National Agreement.  See Ex. A at 192-97. When Velasquez failed to bid on a position, he was assigned to the job of Mail Processing Clerk at the North Peninsula Delivery and Distribution

1  Center in Burlingame, California, at the same pay level, in accordance with Article 37.4.C.5 of
2  the 2006 National Agreement, which governs the assignment of unassigned employees to
3  residual full-time duty assignments in the same or higher salary level for which the employees
4  meet the minimum qualifications.  See Exs. A at 193-94, D, E; Croteau Decl. ¶ 9.

     Thus, it is Velasquez, not Defendants, who has failed to comply with proper procedure.
Velasquez did not bid on any positions as instructed, did not submit a DRAC Form, and did not
pursue administrative remedies.  Instead, he immediately applied for a TRO in this Court.

     As Velasquez has no chance of success on the merits, the TRO Application should be
denied for that reason alone and the Court need not inquire into irreparable harm.  See Arcamuzi
v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987) ("If the plaintiff shows no
chance of success on the merits, however, the injunction should not issue.").  Additionally, with
respect to any Rehabilitation Act and FTCA claims, the named defendants are not the proper
defendants.  The proper defendant in a claim under section 701 of the Rehabilitation Act is the
head of the agency.  See Barsen v. Department of the Interior, 896 F.2d 422, 422-23 (9th Cir.
1990).  The proper defendant in an FTCA claim is the United States of America.  See 28 U.S.C.
§ 2679(b)(1).

**B.      VELASQUEZ HAS FAILED TO DEMONSTRATE IRREPARABLE HARM.**

     The TRO Application should also be denied because Velasquez has failed to demonstrate
irreparable harm.  Velasquez vaguely asserts that he will be subjected to "substantial harm and
further lost (sic) of wages."  TRO Application at 2.  However, this overlooks the fact that a
hearing before the DRAC has been scheduled for May 28, that the USPS will not require
Velasquez to perform any job duty outside his medical restrictions until the DRAC has issued its
ruling, and that he will continue to receive his regular pay in the meantime.  Croteau Decl. ¶ 13.
Therefore, Velasquez will suffer no harm, much less irreparable harm.

     Moreover, even Velasquez were somehow to suffer lost wages, that would not constitute
irreparable harm.  "[T]he temporary loss of income, ultimately to be recovered, does not usually
constitute irreparable injury. * * * "The key word in this consideration is *irreparable.*  Mere
injuries, however substantial, in terms of money, time and energy necessarily expended * * * are

DEFS.' OPP. TO PL.'S *EX PARTE* APPLICATION FOR A TRO
C 08-02520 JSW                                    8

1  not enough. The possibility that adequate compensatory or other corrective relief will be
2  available at a later date, in the ordinary course of litigation, weighs heavily against a claim of
3  irreparable harm." Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir.
4  1985) (quoting Sampson v. Murray, 415 U.S. 61, 94 (1974)) (alterations in original); see also
5  Regents of Univ. of Cal. v. American Broad. Cos., 747 F.2d 511, 519 (9th Cir. 1984) ("[A] party
6  is not entitled to a preliminary injunction unless he or she can demonstrate more than simply
7  damages of a pecuniary nature.").

## VI.  CONCLUSION

For the foregoing reasons, the TRO Application should be denied.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

DATED: May 22, 2008                    /s/
                                NEILL T. TSENG
                                Assistant United States Attorney