JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney
JOANN M. SWANSON (CABN 88143)
Chief, Civil Division
NEILL T. TSENG (CABN 220348)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7155
    FAX: (415) 436-6748
    neill.tseng@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RODOLFO VELASQUEZ, )<br>)<br>       Plaintiff, )<br>)<br>  v. )<br>)<br>CAROL A. CROTEAU, Manager Personnel )<br>Services, and UNITED STATES POSTAL )<br>SERVICE, )<br>)<br>      Defendants. )<br>) | No. C 08-02520 JSW<br><br>DECLARATION OF CAROL A.<br>CROTEAU |

### DECLARATION OF CAROL A. CROTEAU

1.      I am the Manager of Personnel Services for the United States Postal Service (the

"USPS") in its district in San Francisco, California.  I submit this declaration in support of

Defendants' Opposition to Plaintiff's *Ex Parte* Application for a Temporary Restraining Order.  I

have personal knowledge of the matters in this declaration and could testify competently if called

upon to do so.

2.      I have been the Manager of Personnel Services for the USPS San Francisco

district since January 22, 2005 and previously in San Jose CA February 8, 2003 through January

21, 2005.  In that capacity, my responsibilities have included coordinating hiring, benefits,

compensation, EAS promotions, exams and the bid unit. Other duties include; member of

District Reasonable Accommodations Committee, Member of District Threat Assessment Team,

Member of African American Council, and District Complement Committee. In regards to bids

the personnel office is responsible for providing the vacant bid list to in- plant support that

reviews and provides us the posting with any changes needed, the information is sent to the

Shared Service Center in North Carolina to prepare and post the job bids for employees. The bid

unit also is responsible for creating letters to employees for any bid changes, abolishment of

positions, or placements of unassigned employees per the information provided by in- plant

support all actions are in accordance with the National Contracts.

3.      Full-time employees of the USPS can be in either assigned, or bid, positions,

meaning they have a permanent position unless the position is changed, abolished, or downsized,

or they can be in unassigned positions, meaning they do not have a permanent position but have

DECLARATION OF CAROL A. CROTEAU
C 08-02520 JSW

the right to bid on assigned positions.

4.     Plaintiff Rodolfo Velasquez ("Velasquez") is and has been an unassigned Mail Processing Clerk since beginning full-time employment with the USPS in 1984.  Most recently, he was an unassigned Mail Processing Clerk, level PS-05, in the San Francisco Processing and Distribution Center .

5.     Despite having been advised several times by the USPS over the years to bid on a position, Velasquez has never bid on a position during his employment with the USPS.

6.     On August 7, 2007, the San Francisco district began a downsizing pursuant to Article 12 of the Agreement Between the United States Postal Service and American Postal Workers Union, AFL-CIO (the "2006 National Agreement"), and the downsizing is still ongoing.  True and correct copies of selected relevant articles from the 2006 National Agreement are attached hereto as Exhibit A.

7.     Pursuant to the downsizing, I sent Velasquez a letter dated April 15, 2008, requiring Velasquez to bid on positions by May 1, 2008, or else be assigned to any of the available positions remaining after all the choices had been exhausted, in accordance with Article 37, Section 4 of the 2006 National Agreement.  A true and correct copy of the letter is attached hereto as Exhibit B.

8.     In the San Francisco district, there are 208 unassigned employees total.  Attached hereto as Exhibit C is a true and correct copy of a list of the 208 unassigned employees (with Social Security numbers redacted).  In addition to Velasqez, 61 other unassigned employees received similar notices that their positions were being downsized and that they should bid on

positions, or else be assigned to any of the available positions remaining after all the choices have been exhausted, in accordance with Article 37, Section 4 of the 2006 National Agreement. The unassigned employees receiving those notices, including Velasquez, are the first 62 persons on the list.

9.      Velasquez did not bid on a position and therefore was assigned effective May 24, 2008, to the job of Mail Processing Clerk at the North Peninsula Delivery and Distribution Center in Burlingame, California, in accordance with Article 37.4.C.5 of the 2006 National Agreement. Velasquez was informed of this assignment via a letter I sent to him dated May 12, 2008. A true and correct copy of the letter is attached hereto as Exhibit D.

10.     A true and correct copy of a printout from the CMS Computer System showing Velasquez's new position in Burlingame is attached hereto as Exhibit E.

11.     Velasquez was also informed via letter dated April 28, 2008, that if he should have a concern about his physical limitations, then he should submit an enclosed District Reasonable Accommodation Committee ("DRAC") Form to the DRAC. A true and correct copy of the letter with enclosures is attached hereto as Exhibit F.

12.     As of the time this declaration was signed, Velasquez had not submitted the DRAC Form.

13.     The USPS has construed the complaint and TRO application with supporting declaration filed in this action as a constructive request to the DRAC for a reasonable accommodation, and has set a meeting for May 28, 2008, at 10:30 a.m. Attached hereto as Exhibit G is a true and correct copy of a letter dated May 22, 2008, that was sent to Velasquez

DECLARATION OF CAROL A. CROTEAU
C 08-02520 JSW

scheduling him for the DRAC meeting on May 28, 2008, at 10:30 a.m.  Velasquez will not be

required to perform any job duty outside of his current medical restrictions until the DRAC has

ruled on his request, and will continue to receive his regular pay in the meantime.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

May 22, 2008, at San Francisco, California.


CAROL A. CROTEAU


DECLARATION OF CAROL A. CROTEAU
C 08-02520 JSW

Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

Between
**American
Postal Workers
Union, AFL-CIO**

And
**U.S. Postal Service**

**November 21, 2006
November 20, 2010**



Article 1.1

## PREAMBLE

This Agreement (referred to as the **2006** National Agreement) is entered into by and between the United States Postal Service (hereinafter referred to as the "Employer") and the American Postal Workers Union, AFL-CIO (hereinafter referred to as the "Union"). The Agreement is effective as of **February 3, 2007** unless otherwise provided.

## ARTICLE 1
## UNION RECOGNITION

### Section 1. Union

The Employer recognizes the Union designated below as the exclusive bargaining representative of all employees in the bargaining unit for which each has been recognized and certified at the national level:

American Postal Workers Union, AFL-CIO—
Maintenance Employees
American Postal Workers Union, AFL-CIO—
Motor Vehicle Employees
American Postal Workers Union, AFL-CIO—
Postal Clerks
- The Special Delivery Messengers were merged into the Clerk Craft by Memorandum of Understanding dated November 20, 1997.
American Postal Workers Union, AFL-CIO—Mail
Equipment Shops Employees
American Postal Workers Union, AFL-CIO—Material
Distribution Centers Employees

1

**Article 12.5**

**Section 5. Reassignments**

### A. Basic Principles and Reassignments

When it is proposed to:

1. Discontinue an independent installation;

2. Consolidate an independent installation (i.e., discontinue the independent identity of an installation by making it part of another and continuing independent installation);

3. Transfer a classified station or classified branch to the jurisdiction of another installation or make an independent installation;

4. Reassign within an installation employees excess to the needs of a section of that installation;

5. Reduce the number of regular work force employees of an installation other than by attrition;

6. Centralized mail processing and/or delivery installation (Clerk Craft only);

7. Reassignment—motor vehicles;

8. Reassignment part-time flexibles in excess of quota; such actions shall be subject to the following principles and requirements.

### B. Principles and Requirements

1. Dislocation and inconvenience to full-time and part-time flexible employees shall be kept to the minimum consistent with the needs of the service.

56

**Article 12.5.B.7**

2. The Vice-President, Area Operations shall give full consideration to withholding sufficient full-time and part-time flexible positions within the area for full-time and part-time flexible employees who may be involuntarily reassigned. When positions are withheld, local management will periodically review the continuing need for withholding such positions and discuss with the union the results of such review.

3. No employee shall be allowed to displace, or "bump" another employee, properly holding a position or duty assignment.

4. The Union shall be notified in advance (as much as six (6) months whenever possible), such notification to be at the regional level, except under A.4 above, which shall be at the local level.

5. Full-time and part-time flexible employees involuntarily detailed or reassigned from one installation to another shall be given not less than 60 days advance notice, if possible, and shall receive moving, mileage, per diem and reimbursement for movement of household goods as appropriate if legally payable will be governed by the standardized Government travel regulations as set forth in Methods Handbook F-10, "Travel."

6. Any employee volunteering to accept reassignment to another craft or occupational group, another branch of the Postal Service, or another installation shall start a new period of seniority beginning with such assignment, except as provided herein.

7. Whenever changes in mail handling patterns are undertaken in an area including one or more postal

57

**Article 12.5.B.8**

installations with resultant successive reassign-
ments of clerks from those installations to one or
more central installations, the reassignment of
clerks shall be treated as details for the first 180
days in order to prevent inequities in the seniority
lists at the gaining installations. The 180 days is
computed from the date of the first detail of a clerk
to the central, consolidated or new installation in
that specific planning program. If a tie develops in
establishing the merged seniority roster at the
gaining installation, it shall be broken by total
continuous service in the regular work force in the
same craft.

8. Whenever in this Agreement provision is made for
reassignments, it is understood that any full-time
or part-time flexible employee reassigned must
meet the qualification requirements of the position
to which reassigned.

9. Whenever the provisions of the Section establish-
ing seniority are inconsistent with the provisions
of the Craft Articles of this Agreement, the
provisions of the Craft Articles shall prevail.

10. It is understood that any employee entitled
hereunder to a specific placement may exercise
such entitlement only if no other employee has a
superior claim hereunder to the same position.

11. Surplus/excess U.S. Postal Service Employees—
Surplus/excess U.S. Postal Service employees
from non-mail processing and non-mail delivery
installations, regional offices, the U.S. Postal
Service Headquarters or from other Federal
departments or agencies shall be placed at the foot
of the part-time flexible roll and begin a new period
of seniority effective the date of reassignment.

58

**Article 12.5.C.1.c**

Except as provided in Article 12.2, surplus/excess U.S. Postal Service employees from an APWU bargaining unit in any such facility shall begin a new period of seniority but will retain their full-time or part-time status.

## C. Special Provisions on Reassignments

In addition to the general principles and requirements above specified, the following specific provisions are applicable:

1. **Discontinuance of an Independent Installation**

   a. When an independent installation is discontinued, all full-time and part-time flexible employees shall, to the maximum extent possible, be involuntarily reassigned to continuing postal positions in accordance with the following:

   b. Involuntary reassignment of full-time employees with their seniority for duty assignments to vacancies in the same or lower level in the same craft or occupational group in installations within 100 miles of the discontinued installation, or in more distant installations, if after consultation with the Union, it is determined that it is necessary. The Postal Service will designate such installations for the reassignment of excess full-time employees. When two or more such vacancies are simultaneously available, first choice of duty assignment shall go to the senior employee entitled by displacement from a discontinued installation to such placement.

   c. Involuntary reassignment of full-time

59

**Article 12.5.C.1.c.(1)**

employees for whom consultation did not provide for placement under C.1.b above in other crafts or occupational groups in which they meet minimum qualifications at the same or lower level with permanent seniority for duty assignments under (1) and (2) below, whichever is lesser:

(1)   One day junior to the seniority of the junior full-time employee in the same level and craft or occupation in the installation to which assigned, or

(2)   The seniority the employee had in the craft from which reassigned.

d.   Involuntary reassignment of part-time flexible employees with seniority in any vacancy in the part-time flexible quota in the same craft or occupational group at any installation within 100 miles of the discontinued installation, or in more distant installations, if after consultation with the Union it is determined that it is necessary, the Postal Service will designate such installations for the reassignment of the part-time flexible employees.

e.   Involuntary reassignment of part-time flexible employees for whom consultation did not provide for placement under C.1.d above in other crafts or occupational groups in which they meet minimum qualification at the same or lower level at the foot of the existing part-time flexible roster at the receiving installation and begin a new period of seniority.

f.   Full-time employees for whom no full-time vacancies are available by the time the

60

**Article 12.5.C.2.b**

installation is discontinued shall be changed to part-time flexible employees in the same craft and placed as such, but shall for six months retain placement rights to full-time vacancies developing within that time within any installation within 100 miles of the discontinued installation, or in more distant installations, if after consultation with the Union it is necessary, U.S. Postal Service will designate such installations for the reassignment of excess full-time employees on the same basis as if they had remained full-time.

g. Employees, full-time or part-time flexible, involuntarily reassigned as above provided shall upon the reestablishment of the discontinued installation be entitled to reassignment with full seniority to the first vacancy in the reestablished installation in the level, craft or occupational group from which reassigned.

2. **Consolidation of an Independent Installation**

a. When an independent postal installation is consolidated with another postal installation, each full-time or part-time flexible employee shall be involuntarily reassigned to the continuing installation without loss of seniority in the employee's craft or occupational group.

b. Where reassignments under 2.a, preceding, result in an excess of employees in any craft or occupational group in the continuing installation, identification and placement of excess employees shall be accomplished by

61

**Article 12.5.C.2.c**

the continuing installation in accordance with the provisions of this Agreement covering such situations.

c.  If the consolidated installation again becomes an independent installation, each full-time and part-time flexible employee whose reassignment was necessitated by the previous consolidation shall be entitled to the first vacancy in the reestablished installation in the level and craft or occupational group held at the time the installation was discontinued.

3. **Transfer of a Classified Station or Classified Branch to the Jurisdiction of Another Installation or Made an Independent Installation**

a.  When a classified station or classified branch is transferred to the jurisdiction of another installation or made an independent installation, all full-time employees shall at their option remain with the classified station or classified branch without loss of seniority, or remain with the installation from which the classified station or classified branch is being transferred.

b.  A realistic appraisal shall be made of the number of employees by crafts or occupations who will be needed in the station after transfer, and potential vacancies within these requirements created by the unwillingness of employees to follow the station to the new jurisdiction shall be posted for bid on an office-wide basis in the losing installation.

c.  If the postings provided in paragraph 3.b, preceding, do not result in sufficient employees

62

**Article 12.5.C.4.c**

to staff the transferred classified station or classified branch, junior employees, by craft or occupational group on an installation-wide seniority basis in the losing installation, shall be involuntarily reassigned to the classified station or classified branch and each employee thus involuntarily reassigned shall be entitled to the first vacancy in such employee's level and craft or occupational group in the installation from which transferred.

4. **Reassignment Within an Installation of Employees Excess to the Needs of a Section**

   a. The identification of assignments comprising for this purpose a section shall be determined locally by local negotiations. If no sections are established immediately by local negotiations, the entire installation shall comprise the section.

   b. Full-time employees, excess to the needs of a section, starting with that employee who is junior in the same craft or occupational group and in the same level assigned in that section, shall be reassigned outside the section but within the same craft or occupational group. They shall retain their seniority and may bid on any existing vacancies for which they are eligible to bid. If they do not bid, they may be assigned in any vacant duty assignment for which there was no senior bidder in the same craft and installation. Their preference is to be considered if more than one such assignment is available.

   c. Such reassigned full-time employee retains the right to retreat to the section from which

63

**Article 12.5.C.4.d**

withdrawn only upon the occurrence of the first residual vacancy in the salary level after employees in the section have completed bidding. Such bidding in the section is limited to employees in the same salary level as the vacancy. Failure to bid for the first available vacancy will end such retreat right. The right to retreat to the section is optional with the employee who has retreat rights with respect to a vacancy in a lower salary level. Failure to exercise the option does not terminate the retreat rights in the salary level in which the employee was reassigned away from the section. In the Clerk Craft, an employee may exercise the option to retreat to a vacancy in a lower salary level only to an assignment for which the employee would have been otherwise eligible to bid.

d. The duty assignment vacated by the reassignment of the junior full-time employee from the section shall be posted for bid of the full-time employees in the section. If there are no bids, the junior remaining unassigned full-time employee in the section shall be assigned to the vacancy.

5. **Reduction in the Number of Employees in an Installation Other Than by Attrition**

a. Reassignments within installation. When for any reason an installation must reduce the number of employees more rapidly than is possible by normal attrition, that installation:

(1) Shall determine by craft and occupational group the number of excess employees;

64

**Article 12.5.C.5.a.(5)**

(2)   Shall, to the extent possible, minimize the impact on regular work force employees by separation of all casuals;

(3)   Shall, to the extent possible, minimize the impact on full-time positions by reducing part-time flexible hours;

(4)   Shall identify as excess the necessary number of junior full-time employees in the salary level, craft, and occupational group affected on an installation-wide basis within the installation; make reassignments of excess full-time employees who meet the minimum qualifications for vacant assignments in other crafts in the same installation; involuntarily reassign them (except as provided for letter carriers and vehicle service employees in Section C.5.b below) in the same or lower level with seniority, whichever is the lesser of:

   (a)   One day junior to the seniority of the junior full-time employee in the same level and craft or occupational group in the installation to which assigned, or

   (b)   The seniority the employee had in the craft from which reassigned. The 5-year rule does not apply.

(5)   The employee shall be returned at the first opportunity to the craft from which reassigned.

65

**Article 12.5.C.5.a.(6)**

    (6)   When returned, the employee retains seniority previously attained in the craft augmented by intervening employment in the other craft.

    (7)   The right of election by a senior employee provided in paragraph b(3), below is not available for this cross-craft reassignment within the installation.

  b.   Reassignments to other installations after making reassignments within the installation:

    (1)   Involuntarily reassign such excess full-time employees starting with the junior with their seniority for duty assignments to vacancies in the same or lower level in the APWU crafts in installations within 100 miles of the losing installation, or in more distant installations if after consultation with the Union it is determined that it is necessary, the Postal Service will designate such installations for the reassignment of excess full-time employees. Employees who meet the minimum qualifications will be afforded their option of available vacancies by seniority. However:

      (a)   Whenever full-time or part-time motor vehicle craft assignments are discontinued in an installation and there is an excess in a position designation and salary level, the excess shall be adjusted to the maximum extent possible by making voluntary reassignments to vacant motor vehicle craft positions in installations within 100 miles unless

66

### Article 12.5.C.5.b.(3)

the employee applies for a vacancy in a more distant installation. Senior qualified applicants for such vacant positions shall be reassigned. When reassignment is in the same designation and salary level, the reassigned employee retains his/her seniority.

(2)   Involuntarily reassign full-time employees for whom consultation did not provide for placement under b(1) above in other crafts or occupational groups in which they meet minimum qualifications at the same or lower level with permanent seniority for duty assignments whichever is lesser of:

    (a)   one day junior to the seniority of the junior full-time employee in the same level and craft or occupational group in the installation to which assigned, or

    (b)   the seniority he/she had in the craft from which reassigned. The 5-year rule does not apply.

(3)   Any senior employee in the same craft or occupational group in the same installation may elect to be reassigned to the gaining installation and take the seniority of the senior full-time employee subject to involuntary reassignment. Such senior employees who accept reassignment to the gaining installation do not have retreat rights.

67

**Article 12.5.C.5.b.(4)**

(4) When two or more such vacancies are simultaneously available, first choice of duty assignment shall go to the senior employee entitled by displacement from a discontinued installation to such placement.

(5) A full-time employee shall have the option of changing to part-time flexible in the same craft or occupational group in lieu of involuntary reassignment. **In the Clerk Craft, in postal installations which have 200 or more man years of employment in the regular work force, a full-time employee shall have the option of changing to part-time regular in lieu of involuntary reassignment.**

(6) Employees involuntarily reassigned under b(1) and (2) above, other than senior employees who elect to be reassigned in place of junior employees, shall be entitled at the time of such reassignment to file a written request to be returned to the first vacancy in the level, in the craft or occupational group in the installation from which reassigned, and such request shall be honored so long as the employee does not withdraw it or decline to accept an opportunity to return in accordance with such request.

In the Clerk Craft, an employee(s) involuntarily reassigned shall be entitled at the time of such reassignment to file a written request to return to the first vacancy in the craft and installation from which reassigned. Such request for

68

**Article 12.5.C.6.a**

retreat rights must indicate whether the
employee(s) desires to retreat to the
same, lower, and/or higher salary level
assignment and, if so, what salary
level(s). The employee(s) shall have the
right to bid for vacancies within the
former installation and the written
request for retreat rights shall serve as a
bid for all vacancies in the level from
which the employee was reassigned and
for all residual vacancies in other levels
for which the employee has expressed a
desire to retreat. The employee(s) may
retreat to only those assignments for
which the employee(s) would have been
otherwise eligible to bid. If vacancies are
available in a specified lower, higher or
same salary level, the employee will be
given the option. Failure to exercise
retreat rights to the first available
vacancy terminates such rights.
Furthermore, employee(s) electing to
retreat to a lower level assignment are
not entitled to salary protection.

[see Memo, page 313]

6.  **Centralized Mail, Processing and/or Delivery
    Installation (Clerk Craft Only)**

    a.  When the operations at a centralized
        installation or other mail processing and/or
        delivery installation result in an excess of full-
        time clerks at another installation(s), full-time
        clerks who are excess in a losing installation(s)
        by reason of the change, shall be reassigned
        as provided in Section C.5.b. Reassignments
        of clerks shall be treated as details for the first

69

**Article 12.5.C.6.b**

180 days to avoid inequities in the selection of preferred duty assignments by full-time clerks in the gaining installation.

b. Previously established preferred duty assignments which become vacant before expiration of the detail period must be posted for bid and awarded to eligible full-time clerks then permanently assigned in the gaining installation. Excess part-time flexible clerks may be reassigned as provided for in Section C.8.

c. All new duty assignments created in the gaining installation and all other vacant duty assignments in the centralized installation shall be posted for bid. One hundred eighty (180) days is computed from the date of the first detail of an employee. Bidding shall be open to all full-time clerks of the craft involved at the gaining installation. This includes full-time clerks assigned to the gaining installation.

d. When the centralized installation is a new one:

(1) Full-time clerks who apply for reassignment from the losing installation, shall be reassigned with their seniority.

(2) Reassignments shall be in the order of seniority and shall not exceed the number of excess full-time clerks in the losing installation.

(3) The provisions of 5.a, above, apply to reassign junior full-time excess clerks, with their seniority, when there are excess full-time clerks after the

70

**Article 37.4**

employees to work the assignment for training purposes.

### Section 4.  Unencumbered Employees

A. Coverage. Full-time flexible employees and unassigned regular employees are considered unencumbered employees.

B. An employee who becomes an unassigned regular will continue to work the same hours and scheduled days the employee worked immediately prior to becoming unassigned unless notified of a change in work schedule before expiration of the first 28 days after the date on which the employee became unassigned.  Additional work schedule changes may be made, provided that such change cannot be made effective until 180 days after the effective date of any previous change.

C.  Assignment of Unencumbered Employees

Assignment of unencumbered employee(s) will be made within 21 days of the duty assignment becoming residual (Article 37.1) in accordance with the following:

1. Any unencumbered employee(s) who becomes unencumbered for any reason will receive saved grade (Article 37.4.C.6.a) if he/she voluntarily bids to a lower level duty assignment(s) prior to or during the involuntary assignments.  Once an employee is assigned to a same or higher level duty assignment (Article 37.4.C.5) and notified in writing of an assignment this option of bidding a lower level duty assignment will no longer be available.

2. If there are sufficient same or higher level vacancies, unencumbered employees shall be involuntarily assigned to same or higher level

192

**Article 37.4.C.5.a.(1)**

vacancies in accordance with Article 37, Section 4.C.5.

3. If there are insufficient same or higher level vacancies to accommodate assignment of all unencumbered employees, preference eligible employees will be placed first into the same or higher level vacancies in accordance with Article 37, Section 4.C.5.

4. After placement of the unencumbered preference eligible employees, non-preference eligible unencumbered employees will be placed in accordance with Article 37, Section 4.C.5.

5. To the Same or Higher Level

a. Employees not encumbered in bid duty assignments shall bid on duty assignments posted for bid. These employees shall be assigned to residual full-time duty assignments in the same or higher salary level for which the employees meet the minimum qualifications. The assignments will be made in the following order:

(1) Currently Qualified Employees.

Offer residual assignments by seniority to employees who are currently qualified on all of the requirements of a residual assignment. If an employee is qualified on two or more residual duty assignments, the employee will be given an option and be awarded their choice based on seniority. If assignments remain unfilled for which there are currently qualified unencumbered employees, involuntarily assign these

193

**Article 37.4.C.5.a.(2)**

employees by seniority.

(2) Partially Qualified Employees.

Offer residual assignments by seniority to employees who are qualified on at least one, but not all, of the requirements of a residual assignment. If an employee is partially qualified on two or more residual duty assignments, the employee will be given an option and be awarded their choice based on seniority. If assignments remain unfilled for which there are partially qualified unencumbered employees, involuntarily assign these employees by seniority.

(3) Employees Not Currently or Partially Qualified.

Involuntarily assign employees, starting with the senior employee. When there is more than one residual vacancy, the employees will be given an option and be awarded their choice based on seniority.

b. Unencumbered clerks who are detailed to nonbargaining positions are considered to be unavailable for assignment in accordance with a. above.

6. To a Lower Level

a. Lower-level residual vacancies that still exist after application of 4.C.5 above will be offered to unencumbered employees and their preference shall be honored by seniority. Then assign unencumbered employees by

194

Article 37.4.C.6.b.(3)

inverse seniority to lower-level residual full-time assignments.   If an unencumbered preference eligible employee is reached when assigning employees to lower level duty assignments in accordance with this Section (4.C.6):

(1)   The most junior non-preference eligible same level Clerk Craft employee in the installation shall be reassigned to the lower level vacancy.

(2)   The unencumbered preference eligible employee will then be assigned to the duty assignment previously occupied by that junior non-preference eligible employee.

(3)   Any employee reassigned to a lower level duty assignment shall receive saved grade.

h.   An employee who receives saved grade under this Section (4.C.6.a) will receive saved grade as follows:

(1)   Employees who receive saved grade under this Section (4.C.6.a) will not be required to bid or apply for vacancies in their former wage level for a period of two years from the time they occupy the lower level duty assignment.

(2)   After the two year period, employees will be expected to bid or apply to former level duty assignments for which they are qualified or may become qualified by entering a scheme deferment period.

(3)   If no employee in the saved grade status bids or applies to the former level duty

195

**Article 37.4.C.6.b.(4)**

   assignments, the junior employee(s) in the saved grade status will have their saved grade taken away.

  **(4)** An employee in saved grade status who bids or applies for a former wage level duty assignment and is declared the senior bidder but fails to qualify, will lose saved grade protection. No more than one employee in the saved grade status group will have saved grade taken away for each former level duty assignment posted.

**7. a.** An employee who was not hired from a machine register and who has not subsequently passed machine training may not be involuntarily assigned to a machine duty assignment regardless of salary level. This provision does not prohibit the Employer from making a job offer to an unencumbered employee in the same level.

 **b.** An employee hired from a machine register who has not qualified on a particular machine skill (e.g., letter sorting machine, flat sorting machine) may not be involuntarily assigned to a duty assignment requiring that machine skill until all unencumbered employees who have qualified on that machine skill have been assigned.

**8.** Full-time employees are assigned only to full-time residual vacancies. Part-time regular employees are assigned first to part-time regular residual vacancies, then if necessary, they may be assigned to remaining full-time regular residual vacancies if senior to the senior part-time flexible employee.

Article 37.5.A.1

**D. Identification of Newly Established Duty Assignments**

When the number of full-time regular Clerk Craft duty assignments in an installation is less than the number of full-time Clerks, a full-time employee remaining unencumbered for a period of 120 calendar days shall demonstrate the need to post the newly established full-time regular duty assignment in accordance with Article 37.3.A.1.a.

When the number of part-time regular Clerk Craft duty assignments in an installation is less than the number of part-time regular Clerks, a part-time regular employee remaining unencumbered for a period of 120 calendar days shall demonstrate the need to post the newly established part-time regular duty assignment in accordance with Article 37.3.A.1.b.

This process shall continue until all unencumbered Clerks eligible to be assigned have successfully bid or been assigned to duty assignments.

Exceptions: Any full work or paid leave weeks (40 hours) during which unencumbered Clerks are: 1) detailed to non-bargaining positions; 2) identified as impacted under the provisions of Article 12.5.C (excluding 12.5.C.4); or 3) medically unsuitable for assignment, shall not be included when establishing this 120 day period.

[see Memo, page 366]

**Section 5.   Conversion/Part-Time Flexible Preference**

**A. General Principles**

   1.   The Employer will maintain a single merged part-time flexible roll.

197

Exhibit B

SAN FRANCISCO DISTRICT


**UNITED STATES**
**POSTAL SERVICE**

April 15, 2008

Rodolfo Velasquez
58 Lobos St
San Francisco, CA 94112-3020

### SUBJECT: UNASSIGNED REGULAR/ RESIDUAL VACANCY

Attached is a copy of the  Clerk Residual Vacancy list. You are required to make your selections and number them by preference. Submit your selection form to Bids & Promotions, Rm. 65, or mail to Bids & Promotions, P.O.Box 881013, San Francisco, CA 94188-1013, during the period of April 16, 2008 through May 1, 2008. The office  hours are 7:00 a.m. to 4:00 p.m., Monday through Friday. Envelopes must be postmarked on or before the closing date of  May 1, 2008.

If you fail to make a choice, you may be assigned to any of the available positions remaining after all the choices have been exhausted. The assignment you receive as a result of this action will be your permanent assignment until you receive a bid of your own choice. Assignments will be based upon craft seniority and will be effective **May 10, 2008.**

This action is in accordance with the new language of the National Agreement., Article 37 Section 4.

Carol A Croteau
Manager , Personnel Services

cc: Labor Relations
    APWU
    file

P O BOX 881013
SAN FRANCISCO, CA 94188-1013
(415) 550-5205
Fax: (415) 550-5721

Exhibit C

## SF UNASSIGNED CLERKS

TOTAL = 208

| # | SENIORITY | RNK | NAME | SSN | PL | SECT | TTLT | ABOL/AJA | REMARKS | CLAIMS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3/25/1967 | 7 | Patterson, JL | (redacted) | 709 | UAR | MI Rqr Clk | 9/22/2001 | Pending Term | | |
| 2 | 4/8/1967 | 11 | Hawkins, V | (redacted) | O70 | UNBL | Dist Win Clk | 5/22/2000 | Ltd duty job offer / LDC 6700 | | SSDA Gateway |
| 3 | 11/27/1968 | 2 | Stroughter, KA | (redacted) | C58 | UNBL | Dist Win Clk | 11/7/1998 | permanent | closed | SSDA/Golden Gate |
| 4 | 1/18/1969 | 2 | Jenkins, G | (redacted) | 673 | LTD | MPC | 6/13/2000 | 3/04 open OWCP claim | Y - 2 | |
| 5 | 11/1/1969 | 8 | Morris, SJ | (redacted) | 268 | LTD | Dist.Clerk | 12/20/1997 | DC exp. May 2004/will retire | Y - 1 | |
| 6 | 3/21/1970 | 2 | Butler, GF | (redacted) | 705 | UNBL | MPC | 3/10/1970 | perm. rest. - claim closed | N | |
| 7 | 10/17/1970 | 13 | Cousart, GA | (redacted) | 045 | UAR | SSDA | 4/17/2004 | job offer - DOL pays salary | Y-2 | SSDA Civic Center |
| 8 | 10/17/1970 | 4 | Smith, OF | (redacted) | 268 | UNBL | MPC | 3/10/2001 | perm rest - del to EEO Richmor | Y-2 | |
| 9 | 9/15/1973 | 5 | Baldwin, NT | (redacted) | 389 | UNBL | MPC | 3/10/2001 | permanent | Y-1 | |
| 10 | 9/29/1973 | 7 | Bibb, O | (redacted) | 268 | UAR | MPC | 1/21/2006 | involuntary resign 3/1/2008 | | NPDDC T-1 OCR |
| 11 | 5/21/1974 | 1 | Sharpe, SD | (redacted) | 398 | UNBL | Gen.Exped. | 6/16/2000 | Perm. Restriction | Y - 1 | |
| 12 | 1/4/1975 | 4 | Bernardino, LL | (redacted) | 125 | UNBL | Postage Due | 11/14/1992 | permanent | Y-1 | |
| 13 | 9/27/1975 | 1 | Valenzuela, LV | (redacted) | 156 | UNBL | MPC | 3/10/2001 | permanent JO | N | |
| 14 | 9/27/1975 | 3 | Villa, SL | (redacted) | 220 | UNBL | MPC | 4/24/1988 | perm. rest. - currently TTD | Y-2 | |
| 15 | 7/5/1976 | 32 | Chen, LP | (redacted) | 268 | UAR | MPC | 1/21/2006 | involuntary resign 3/1/2008 | | NPDDC T-1 OCR |
| 16 | 2/18/1978 | 6 | Chu, LP | (redacted) | O42 | UAR | SSDA | 2/3/2007 | 204B / RETIRING | | |
| 17 | 3/11/1978 | 32 | Goodman, CL | (redacted) | 435 | UNBL | MPC | 3/1/1987 | permanent restrictions | Y-2 | |
| 18 | 3/25/1978 | 18 | Gibeau, EY | (redacted) | 156 | UNBL | MPC | 3/10/2001 | perm rest - JO dated 9/03 | Y-1 | |
| 19 | 4/22/1978 | 3 | Thomas, KA | (redacted) | 388 | LTD | Dist.Clerk | 5/8/1999 | 3/4 open OWCP | Y-2 | |
| 20 | 4/22/1978 | 12 | Hayles, PL | (redacted) | 45 | UNBL | Dist Win Clk | 8/17/2000 | permanent restrictions | Y-1 | SSDA Airport Sta |
| 21 | 4/22/1978 | 1 | Felix, OK | (redacted) | 151 | LTD | MPC | 8/30/1996 | REDRESS/Job Offer | Y-1 | |
| 22 | 9/23/1978 | 3 | Chavez, EA | (redacted) | 306 | LTD | Dist.Clerk | 5/8/1999 | Ltd duty/Claim open/DC with Inj | Y-2 | |
| 23 | 10/28/1978 | 23 | Ballinton, C | (redacted) | O33 | UAR | SSDA | 3/29/2008 | 204B / Mission Station | | Mission Station |
| 24 | 11/11/1978 | 1 | Patacsil, YB | (redacted) | 108 | UNBL | MPC | 3/10/2001 | perm rest - JO dated 11/06 | Y-1 | |
| 25 | 11/18/1978 | 5 | Quan, S | (redacted) | 152 | UNBL | MPC | 3/23/2002 | perm rest - JO dated 11/02 | Y-1 | |
| 26 | 1/27/1979 | 6 | Germain, JT | (redacted) | 158 | UNBL | MPC | 1/21/2006 | involuntary resign 3/1/2008 | | NPDDC T-1 OCR |
| 27 | 2/10/1979 | 25 | Peel, LO | (redacted) | 408 | LTD | MPC | 2/4/2002 | Job Offer/ per Inj Comp 3/04 | Y - 1 | |
| 28 | 2/24/1979 | 8 | Numag, ED | (redacted) | 108 | UNBL | MPC | 4/13/1996 | perm rest-JO 3/02-Areacare-Inc | Y-1 | |
| 29 | 2/27/1979 | 16 | Romero, N | (redacted) | 158 | UAR | MPC | 1/21/2006 | involuntary resign 3/1/2008 | Y-1 | NPDDC T-1 OCR |
| 30 | 4/21/1979 | 8 | Gemo, MA | (redacted) | 154 | UNBL | MPC | 3/10/2001 | permanent restrictions - J.O. | Y-1 | |
| 31 | 5/31/1979 | 2 | Hitomi, ST | (redacted) | 87 | UNBL | Mark-up Clk | 8/28/1999 | permanent restrictions | Y-1 | SSDA Gateway |
| 32 | 6/5/1979 | 2 | Palmorecambe | (redacted) | 10 | UNBL | Mark-up Clk | 9/30/95 | permanent restrictions | y-1 | |
| 33 | 6/11/1979 | 4 | Punzalan, EA | (redacted) | 435 | UAR | MPC | 7/9/2005 | involuntary resign 3/1/2008 | Y-1 | NPDDC T-1 OCR |
| 34 | 7/14/1979 | 7 | Stafford, LE | (redacted) | 158 | UNBL | MPC | 3/10/2001 | perm rest - JO dated 3/02 | Y-2 | |
| 35 | 11/3/1979 | 5 | Asprec, N | (redacted) | 158 | UAR | MPC | 1/21/2006 | involuntary resign 3/1/2008 | Y-1 | NPDDC T-1 OCR |
| 36 | 3/29/1980 | 17 | Crisostomo, LD | (redacted) | 387 | UNBL | FSM | 1/6/2005 | FSM sections abolished | Y | |

SF UNASSIGNED CLERKS

4/15/2008

2

# SF UNASSIGNED CLERKS

**TOTAL = 208**

| No. | Sen. | Name | Date | ID | Status | Type | Description | Date | Code | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 37 | 9 | Ferry, LC | 3/29/1980 | 154 | UNBL | MPC | perm rest - JO dated 11/99 | 1/29/2000 | Y-1 | |
| 38 | 4 | Valencia, HT | 4/5/1980 | 387 | UNBL | MPC | permanent restrictions | 3/10/2001 | Y-2 | |
| 39 | 7 | Fernandez, SP | 7/26/1980 | 007 | UAR | Lead SSDA | 204B | 8/5/2005 | r-1 | |
| 40 | 1 | Dake, DE | 2/23/1982 | 684 | UNBL | MPC | hired under Affirmative Action | 4/22/2020 | closed | |
| 41 | 1 | Relnaguerra, EA | 6/12/1982 | 686 | UNBL | Dist.Clerk | hired under Affirmative Action | *** | | T-1 94123 /Man Inc |
| 42 | 3 | Jemera, NA | 10/30/1982 | 235 | UAR | MPC | invol reassign PQ | 7/22/2006 | Y-2 | |
| 43 | 2 | Fontanoz, BJ | 6/11/1983 | 694 | UNBL | MPC | hired under Affirmative Action | 4/22/2020 | Y-2 | |
| 44 | 1 | Mah, MC | 6/15/1983 | 711 | UNBL | MPC | permanent restrictions | 3/15/1997 | | |
| 45 | 2 | Evangelista, CN | 7/3/1983 | 162 | UAR | MPC | 204B | 9/20/2004 | Y-1 | SSDA/ P&DC Finance |
| 46 | 9 | Vela, MU | 8/8/1983 | 50 | UNBL | MPC | permanent restrictions | 3/15/1997 | Y-1 | |
| 47 | 8 | Cerrero, YG | 8/20/1983 | 180 | LTD | MPC | permanent-no claim | 3/23/2002 | | |
| 48 | 1 | Byrd, RL | 10/15/1983 | 266 | UNBL | MPC | 204B | 8/30/1997 | | |
| 49 | 11 | Randhawa, JS | 10/15/1983 | 209 | UAR | MPC | sec. guard at ISC - perm rest | 6/23/2007 | Y-1 | |
| 50 | 15 | Abellan, MA | 10/15/1983 | 674 | UNBL | MPC | perm rest | 2/7/2004 | | |
| 51 | 17 | Leano, M | 10/15/1983 | 337 | UAR | MPC | T-3 FSM Abol/ ext LWOP | 7/21/2006 | Y-1 | NPDDC T-1 OCR |
| 52 | 19 | Del Rosario, JF | 10/15/1983 | 139 | UNBL | MPC | perm rest - detailed to EPC | 3/23/2002 | | |
| 53 | 12 | Soriano, JR | 12/31/1983 | 688 | UAR | MPC | involuntary reassign 3/12/2008 | 4/29/2006 | Y-2 | |
| 54 | 4 | Blue, BR | 3/31/1984 | 397 | UNBL | MPC | hired under Affirmative Action | 11/14/1992 | N | |
| 55 | 3 | Valasquez, R | 3/31/1984 | 361 | UNBL | MPC | perm rest - JO dated 8/02 | 11/14/1992 | Y-3 | |
| 56 | 2 | Wooten, LY | 3/31/1984 | 380 | UAR | SSDA | perm rest - JO dated 9/04 | 3/10/2001 | N | Sutter Station |
| 57 | 2 | Alvarez, B | 4/7/1984 | O14 | UAR | MPC | 204B | 3/29/2008 | N | T-1 94110 / Man inc |
| 58 | 10 | Bosley, PV | 4/14/1984 | 136 | UNBL | MPC | perm rest - claim closed | 3/10/2001 | Y-1 | |
| 59 | 12 | Lozano, E | 4/14/1984 | 158 | UAR | MPC | invol reassign/ PQ | 1/21/2006 | Y-1 | |
| 60 | 20 | Shepherd, GV | 4/14/1984 | 286 | UNBL | MPC | permanent | 3/23/2002 | Y-1 | |
| 61 | 6 | Garcia, R | 5/26/1984 | 220 | UNBL | MPC | P&S | 3/23/2002 | Y-1 | |
| 62 | 2 | Mata, RS | 6/9/1984 | 144 | UNBL | FSM Oper | perm rest - JO dated 7/03 | 6/7/1987 | Y-1 | |
| 63 | 10 | Castenada, DP | 7/21/1984 | 268 | UNBL | Mark-up Clk | hired under Affirmative Action | 12/20/1997 | Y-4 | SSDA Steiner Sta |
| 64 | 1 | Lew, L | 8/18/1984 | 87 | UNBL | MPC | permanent restrictions | 7/1/1992 | Y-1 | |
| 65 | 4 | Smith, YM | 9/29/1984 | 711 | LTD | MPC | Detailed to Lincoln Chew. Oper | 9/9/2000 | | |
| 66 | 9 | Orozco-Tobar, N | 12/8/1984 | 055 | UAR | SSDA | 204B/ Irving PRS | 10/28/2006 | | |
| 67 | 15 | Sanchez, G | 12/8/1984 | 015 | UAR | SSDA | JOB OFFER | 3/3/2007 | Y-3 | |
| 68 | 5 | Bautista, AC | 4/6/1985 | 284 | LTD | Mail Proc | LDC 6700, CMS has wrong add | LDC 1100 | | |
| 69 | 9 | Duncan, CD | 4/6/1985 | 331 | LTD | MPC | JOB OFFER  med exp 5/1/04 | 8/23/1991 | Y-1 | |
| 70 | 4 | Holliday, MK | 4/6/1985 | 268 | LTD | Dist Win Clk | JOB OFFER | 4/13/1996 | Y-1 | |
| 71 | 7 | Lara, CA | 4/6/1985 | 711 | UNBL | MPC | permanent restrictions | 9/25/1999 | Y-1 | |
| 72 | 3 | Roel, RL | 4/6/1985 | 506 | UNBL | MPC | perm rest - JO dated 3/03 | 3/10/2001 | Y-1 | |
| 73 | 2 | Brock, DM | 10/12/1985 | 268 | LTD | MPC | currently TTD | 3/10/2001 | Y-1 | |

SF UNASSIGNED CLERKS

4/15/2008

2

TOTAL = 208

## SF UNASSIGNED CLERKS

3

| # | Date | Name | No. | Type | Office | Date | Description | Code | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 74 | 10/26/1985 | Wells, MA | 684 | UNBL | MPC | 4/22/2000 | do not assign per Susan | N | |
| 75 | 11/9/1985 | Flores Jr, EP | 382 | LTD | MPC | 3/4/1999 | DC exp: 4/1/04 | Y - 1 | |
| 76 | 11/23/1985 | Esplana, MR | 503 | UAR | MPC | 3/3/2007 | detailed to Address Mgt | | |
| 77 | 11/23/1985 | Akabota, DD | 041 | UAR | | 3/3/2007 | detailed to Sutter Finance | | |
| 78 | 12/7/1985 | Suarez, TC | 380 | LTD | MPC | 7/19/1992 | open claim | Y - 2 | |
| 79 | 12/7/1985 | Khalsa, MS | 389 | UNBL | MPC | 9/3/1994 | perm rest. - JO 3/98 | Y-1 | |
| 80 | 12/21/1986 | Chung, DT | 162 | UAR/ab | Dist.Clerk | | perm rest - DC Exp:10/1/02 | Y - 1 | |
| 81 | 2/15/1986 | Aoay, FP | 87 | UNBL | Mark-up Clk | 11/11/1985 | permanent restrictions | Y-1 | SSDA Lakeshore |
| 82 | 3/1/1986 | Sue, MS | 387 | UNBL | FSM Oper | 10/26/1998 | permanent restrictions | Y-2 | |
| 83 | 3/15/1988 | Song, K | 154 | UNBL | MPC | 7/26/2003 | permanent rest. - JO 403 Retail | Y-2 | |
| 84 | 4/12/1988 | Cuellar, MA | 506 | UAR | MPC | 3/23/2002 | permanent | Y-1 | |
| 85 | 5/24/1986 | Lam, V | 006 | UAR | SSDA | 10/16/2004 | limited duty | | SSDA Brannan Sta |
| 86 | 6/19/1996 | Lam, SM | 87 | UNBL | Mark-up Clk | 7/11/1992 | permanent restrictions | y-1 | |
| 87 | 6/21/1996 | Tenuel, ER | 168 | UNBL | FSM Oper | 3/10/2001 | perm rest - JO dated 11/01 | Y-2 | |
| 88 | 7/5/1986 | Yu, RC | 268 | LTD | MPC | 9/9/2000 | DC expires 3/1/05 | Y - 1 | |
| 89 | 7/5/1986 | Tu, AH | 694 | UNBL | MPC | 4/22/2000 | P&S on claim #13-142040 | Y-2 | |
| 90 | 7/5/1986 | Wong, J | 9 | UNBL | Dist Win Clk | 2/13/1999 | permanent restrictions | y-1 | SSDA Brannan Sta |
| 91 | 7/19/1986 | Lee, L | 158 | UNBL | MPC | 8/12/1998 | perm rest - JO dated 1/98 | Y-1 | |
| 92 | 8/2/1986 | Dang, L | 389 | UNBL | MPC | 10/26/1996 | permanent-JO dated 9/2003 | | |
| 93 | 8/2/1986 | Tong, DT | 235 | LTD | FSM | 1/8/2005 | JO expires 2/5/05 | | |
| 94 | 8/2/1996 | Montenegro, MG | 503 | UAR | SSDA | 3/5/2005 | det. To Address Mgt. | | |
| 95 | 8/2/1996 | Pon, CA | 68 | UNBL | Dist Win Clk | 12/22/2000 | permanent restrictions | y-2 | |
| 96 | 9/13/1996 | Merino, JA | 694 | UNBL | MPC | 4/22/2000 | hired under Affirmative Action | N | |
| 97 | 12/20/1986 | Foster, VL | 674 | UNBL | MPC | 4/22/2000 | hired under Affirmative Action | Y-2 | |
| 98 | 2/14/1987 | Tong, SY | 235 | UNBL | MPC | 3/10/2001 | perm rest-JO dated 12/98 | | |
| 99 | 2/14/1987 | Ong, MB | 235 | UNBL | FSM | 6/16/2001 | job offer-open claim | | |
| 100 | 2/14/1987 | Wright, IM | 606 | UAR | FSM | 1/8/2005 | detailed to Human Resources | | |
| 101 | 2/14/1987 | Teodoro, JG | 341 | LTD | Dist.Clerk | 5/8/1999 | OWCP/ Case Open | Y - 1 | |
| 102 | 3/14/1987 | Damian, BA | 333 | UNBL | MPC | 12/20/1997 | hired under Affirmative Action | Y-1 | |
| 103 | 3/16/1987 | Fong, L | 686 | UNBL | MPC | 4/22/2000 | hired under Affirmative Action | closed | |
| 104 | 5/9/1987 | Melcher, PR | 260 | UAR | MPC | 9/9/2000 | invol reassign /PQ 94118-94121 | | NSCC ParPost |
| 105 | 5/9/1987 | Mah, WH | 331 | UNBL | MPC | 3/10/2001 | perm rest - JO dated 5/98 | Y-1 | |
| 106 | 9/12/1987 | Aguirre, AM | 285 | UNBL | MPC | 3/23/2002 | P&S on claim #13-1054618 | Y-2 | |
| 107 | 10/10/1987 | Hernandez, W | | UAR | SSDA | 3/29/2006 | 204B | | SSDA Gateway |
| 108 | 10/10/1987 | Sariano, IE | 235 | LTD | MPC | 9/8/2000 | DWCP LWOP | Y - 1 | |
| 109 | 11/21/1987 | Jones, GC | 168 | LTD | nixie | 10/20/2001 | 3/04 open OWCP claim | Y - 1 | |
| 110 | 11/21/1987 | Bowen, JP | 268 | UNBL | MPC | 3/23/2002 | permanent - claim closed | Y | |

SF UNASSIGNED CLERKS

4/15/2008

3

TOTAL = 208

SF UNASSIGNED CLERKS

| # | Date | No | Name | Code | Status | Office | Date | Description | Y | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 111 | 11/21/1987 | 15 | Alcairo, CJ | 232 | UAR | MPC | 7/21/2006 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 112 | 12/5/1987 | 13 | Leung, EY | O58 | UAR | SSDA | 3/19/2005 | 204B | | |
| 113 | 12/14/1987 | 36 | Chan, CH | 720 | UNBI | MPC | 3/10/2011 | P&S on claim #13-10780396 | Y-2 | |
| 114 | 1/16/1988 | 28 | Tecson, MR | 341 | UNBL | Dist.Clerk | 8-May | permanent modified work | Y - 2 | |
| 115 | 1/30/1988 | 28 | De La Cerna, M | O26 | UAR | SSDA | 3/29/2008 | 204B | | Visitacion Station |
| 116 | 2/13/1988 | 13 | Garcia, JG | 260 | UNBL | Dist.Clerk | 9/9/2000 | PERM Rstrct/det to Del Pgms | closed | |
| 117 | 3/12/1988 | 2 | Navarro, ME | 506 | UNBL | MPC | 3/10/2001 | permanent restrictions | Y-1 | |
| 118 | 3/12/1988 | 5 | Rodriguez, ME | 139 | UNBL | MPC | 9/20/2003 | permanent restrictions | Y-1 | |
| 119 | 4/23/1988 | 3 | Romero Griffin, C | 268 | UNBL | FSM Oper | 2/15/1997 | perm rest - JO dated 9/04 | Y-1 | |
| 120 | 4/23/1988 | 6 | Rozel, CE | 332 | UNBL | FSM Oper | 1/29/2000 | perm rest - JO dated 8/97 | Y-1 | |
| 121 | 5/7/1988 | 13 | Saleh, GJ | 380 | UNBL | MPC | 3/23/2002 | P&S - JO dated 5/04 | Y-1 | |
| 122 | 9/10/1988 | 1 | Sintox, K | 156 | UAR | FSM | 1/8/2005 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 123 | 10/8/1988 | 5 | Villanueva, BD | 158 | UNBL | MPC | 11/14/1992 | perm rest - JO dated 12/98 | Y-2 | |
| 124 | 10/8/1988 | 2 | Xu, S | 268 | UNBL | MPC | 3/10/2001 | permanent restrictions | Y-3 | |
| 125 | 10/22/1988 | 9 | Zhu, DG | 158 | UAR | MPC | 3/10/2001 | permanent | | |
| 126 | 10/22/1988 | 15 | Navarro, P | 1SC | UAR | MPC | 2/2/2008 | 204B | | from EAS to craft |
| 127 | 10/22/1988 | 31 | Trinh, NP | 068 | LTD | SS/DC | 4/3/2002 | Ltd duty job offer/open claim as | Y - 1 | SSDA North Beach |
| 128 | 11/19/1988 | 25 | Wu, H | 268 | UAR | MPC | 1/21/2006 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 129 | 11/18/1988 | 38 | Cahue, JE | 506 | LTD | MPC | 3/23/2002 | claim closed | Y | |
| 130 | 11/19/1988 | 39 | Santiago, G | 286 | LTD | MPC | 3/23/2002 | JOB OFFER | Y-1 | |
| 131 | 11/19/1988 | 36 | Brown, SS | 333 | UNBL | MPC | 11/14/1992 | hired under Affirmative Action | Y-1 | |
| 132 | 12/3/1986 | 9 | Cooke, DE | 158 | UNBL | MPC | 11/14/1992 | perm restr - JO dated 9/04 | Y-1 | |
| 133 | 12/3/1988 | 13 | Smith, R | 144 | UNBL | MPC | 3/8/2003 | hired under Affirmative Action | Y-2 | |
| 134 | 1/28/1989 | 13 | Garcia, RS | 286 | UNBL | MPC | 11/14/1992 | perm restr - JO dated 8/03 | Y-1 | |
| 135 | 2/11/1989 | 11 | Grewal, BK | 108 | UNBL | MPC | 3/10/2001 | permanent restrictions | Y-1 | |
| 136 | 3/11/1989 | 8 | Chung, JJ | 156 | UNBL | MPC | 3/10/2001 | permanent restrictions | Y-1 | |
| 137 | 3/25/1989 | 3 | Salinda, GA | 387 | UNBL | MPC | 3/10/2001 | permanent restrictions | Y-1 | |
| 138 | 6/17/1989 | 6 | Caserta, TN | 268 | LTD | FSM | 1/16/1999 | LDC 6700/ Abolished LWOP | Y-1 | |
| 139 | 3/24/1990 | 9 | Huang, YY | 108 | UNBL | FSM Oper | 7/6/1996 | perm rest JO 402 Opp.Support | Y-1 | |
| 140 | 4/7/1990 | 5 | Cheng, CS | 231 | LTD | FSM | 6/16/2001 | Documentation expires 4/15/04 | Y - 1 | |
| 141 | 4/21/1990 | 3 | Lima, C | 231 | LTD | FSM | 6/16/2001 | JOB OFFER-permanent restrict | Y - 2 | |
| 142 | 4/21/1990 | 2 | Chau, AS | 411 | UNBL | MPC | 1/25/2003 | JOB OFFER-permanent restrict | Y-2 | |
| 143 | 8/25/1990 | 1 | Yip, T | 268 | UAR | MPC | 7/21/2006 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 144 | 11/3/1990 | 3 | Kaur, M | 135 | UAR | MPC | 7/21/2006 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 145 | 11/3/1990 | 5 | Kim, MJ | 156 | UNBL | MPC | 10/16/1993 | perm rest - JO dated 5/02 | Y-1 | |
| 146 | 11/3/1990 | 6 | Tat, GC | 235 | UAR | MPC | 7/21/2006 | involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 147 | 11/3/1990 | 13 | Chan, L | 387 | UNBL | MPC | 5/15/1993 | | | |

SF UNASSIGNED CLERKS

4/15/2008

**TOTAL = 208**

## SF UNASSIGNED CLERKS

5

| # | Name | No. | Hire Date | O55 | UAR | SSDA | Date | Status | Y | Location |
|---|------|-----|-----------|-----|-----|------|------|--------|---|----------|
| 148 | Stahmer, RC | 2 | 11/17/1990 | 332 | UAR | FSM | 4/7/2001 | 204B | Y-3 | |
| 149 | Chao, SS | 5 | 12/1/1990 | 233 | UN'BL | Pcl Pst Dist | 6/16/2001 | 304 open OWCP claim | Y-1 | |
| 150 | Chug, MY | 20 | 12/1/1990 | 584 | UN'BL | SPBS | 2/3/1996 | P&S | i | |
| 151 | Liang, JM | 12 | 12/1/1990 | 139 | LTD | FSM | 6/16/2001 | Job Offer at SSC. Perm mod | i | |
| 152 | Gong, DZ | 2 | 12/29/1990 | 434 | UAR | MPC | 6/16/2001 | 304 open OWCP claim | Y-2 | |
| 153 | Bumagat, W | 1 | 5/5/1993 | 156 | UAR | MPC | 11/25/2001 | EAS-Trans & Networks | | |
| 154 | Flores, KP | 10 | 10/30/1993 | 87 | UN'BL | Mark-up Clk | 3/23/2002 | permanent restrictions | Y-1 | |
| 155 | Mendoza, MO | 8 | 10/30/1993 | 377 | UN'BL | MPC | 11/7/1998 | permanent restrictions | y-1 | |
| 156 | Castillo, DF | 15 | 11/13/1993 | 435 | UN'BL | MPC | 3/23/2002 | permanent limitations | Y-2 | |
| 157 | Hernandez, ED | 25 | 11/13/1993 | 684 | UAR | MPC | 1/25/2003 | 204B | | |
| 158 | Manuel Jr., MC | 9 | 11/27/1993 | 572 | LTD | MPC | 1/10/2004 | 94015-13-1100252 | Y-1 | |
| 159 | Martinez, YF | 6 | 11/27/1993 | 139 | LTD | Pcl Pst Dist | 6/16/2001 | Job Offer. 3/04 open OWCP c... | Y-1 | |
| 160 | Morales, H | 12 | 11/27/1993 | 146 | UN'BL | Dist Win Clk | 3/27/1999 | perm rest - JO dated 1/04 | Y-1 | |
| 161 | Young, A | 2 | 3/19/1994 | O76 | UAR | MPC | 9/20/2003 | 204B | | |
| 162 | Hamby, SM | 3 | 3/19/1994 | 156 | UAR | MPC | 11/7/1998 | permanent restrictions | Y-2 | SSDA Lakeshore Sta |
| 163 | Guan, MC | 17 | 7/20/1996 | 337 | UAR | MPC | 7/21/2006 | Involuntary resign 3/1/2008 | | NPDDC T-1 OCR |
| 164 | Yang, L | 1 | 11/8/1997 | 335 | UAR | MPC | 7/21/2006 | Voluntary (94131-succ) | | |
| 165 | Hu, J | 13 | 11/8/1997 | 184 | UAR | MPC | 10/29/2005 | Voluntary(SSDA-Steiner /succ) | | |
| 166 | Zhou, H | 5 | 3/14/1998 | 233 | UAR | MPC | 10/28/2005 | Voluntary (Y-3 Int'l -succ) | | NPDDC T-1 OCR |
| 167 | Louis, LA | 8 | 3/14/1998 | 137 | UAR | MPC | 10/29/2005 | Involuntary reassign 3/1/2008 | | NPDDC T-1 OCR |
| 168 | Tulatuluu, C | 2 | 3/28/1998 | 137 | UAR | MPC | 10/29/2005 | Involuntary reassign 3/1/2008 | | NSCC 94109/94103 |
| 169 | Liang, L | 6 | 3/28/1998 | 137 | UAR | MPC | 10/29/2005 | Involuntary reassign / PQ | | |
| 170 | Chang, A | 10 | 3/28/1998 | 378 | UAR | MPC | 10/29/2005 | Voluntary (94124-succ) | | |
| 171 | Hoac, D | 13 | 3/28/1998 | 158 | UAR | MPC | 12/10/2005 | extended LWOP | | |
| 172 | Lu, Pan His | 17 | 3/28/1998 | 378 | UAR | MPC | 12/10/2005 | Invol reassign /PQ | | T-1 94117 |
| 173 | Gabriana, LB | 20 | 3/28/1998 | 184 | UAR | MPC | 12/10/2005 | Shop Steward T-3 | | |
| 174 | Sellers, EM | 21 | 3/28/1998 | 335 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | | T-1 94116 |
| 175 | Yee, A | 8 | 4/11/1998 | 144 | UAR | MPC | 12/10/2005 | PQ 94102/94103(voluntary) | | |
| 176 | Macias, DM | 7 | 4/25/1998 | 158 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | | NSCC 94124/94102 |
| 177 | Mitsuda, M | 14 | 6/6/1998 | 144 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | City C | T-1 Fringes/Man Iic |
| 178 | Feliciano, MA | 8 | 6/20/1998 | 266 | UAR | MPC | 12/10/2005 | Involuntary(94122NSCC succ) | | |
| 179 | Coleman, CD | 12 | 6/20/1998 | 317 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | City A | T-1 Fringe/Man Inc |
| 180 | Hwang, C | 7 | 7/4/1998 | 144 | UAR | MPC | 12/10/2005 | Shop Steward T-3 | | |
| 181 | Fong, T | 6 | 7/18/1998 | 317 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | | NSCC 94114/94110 |
| 182 | Park, T | 8 | 8/1/1998 | 144 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | | NSCC 94133/94109 |
| 183 | Hsih, BC | 19 | 8/1/1998 | 317 | UAR | MPC | 12/10/2005 | Involuntary reassign/3-1-2008 | | NPDDC T-1 OCR |
| 184 | Vuong, PK | 21 | 8/1/1998 | 689 | UAR | MPC | 12/10/2005 | 204B | | |

## SF UNASSIGNED CLERKS

4/15/2008

5

## SF UNASSIGNED CLERKS

**TOTAL = 208**

| # | Date | | Name | | | | | Date | Note | |
|---|---|---|---|---|---|---|---|---|---|---|
| 185 | 8/1/1998 | 25 | Luu, ST | | 622 | UAR | MPC | 12/10/2005 | 204B | NSCC 94116 |
| 186 | 8/1/1998 | 27 | Lam, CQ | | 388 | UAR | MPC | 12/10/2005 | Involuntary reassign / PQ | |
| 187 | 8/15/1998 | 3 | Herreria, A | | 686 | UAR | MPC | 12/10/2005 | 204B | |
| 188 | 8/15/1988 | 7 | Chow, E | | 268 | UAR | MPC | 12/10/2005 | PQ NPDDC T-1 SB-SC (voluntary) | |
| 189 | 8/15/1988 | 6 | Galapon, T | | 156 | UAR | MPC | 11/24/2007 | Involuntary reassign / PQ | NPDDC SB-Scarios |
| 190 | 8/15/1998 | 10 | Gomez, U | | | UAR | MPC | 11/24/2007 | voluntary reassign 2/16/08 | |
| 191 | 8/29/1998 | 12 | Xue, J | | 688 | UAR | MPC | 11/24/2007 | | |
| 192 | 8/29/1998 | 17 | Lin, RW | | 686 | UAR | MPC | 11/24/2007 | | |
| 193 | 11/17/1998 | 1 | Burnett, S | | 690 | UAR | MPC | 11/24/2007 | | |
| 194 | 3/27/1999 | 3 | Tam Yu, IM | | 135 | UAR | MPC | 11/24/2007 | PQ NPDDC T-1 SB-SC ( reg bid) | |
| 195 | 4/10/1999 | 5 | Chau, N | | 268 | UAR | MPC | 11/24/2007 | | |
| 196 | 4/10/1999 | 9 | Baxter, L | | 680 | UAR | MPC | 11/24/2007 | Detailed to Labor Relations | |
| 197 | 4/24/1999 | 9 | Mendoza, NP | | 567 | UAR | MPC | 11/24/2007 | | |
| 198 | 8/26/2000 | 8 | Chong, JS | | O85 | UAR | MPC | 11/24/2007 | Pine St Station | |
| 199 | 10/7/2000 | 1 | Lin, Y | | O01 | UAR | MPC | 11/24/2007 | EPC | |
| 200 | 10/7/2000 | 3 | Tiomico, PT | | O79 | UAR | MPC | 11/24/2007 | Steiner St Station | |
| 201 | 10/7/2000 | 8 | Ngai, AK | | O58 | UAR | MPC | 11/24/2007 | Golden Gate Station | |
| 202 | 10/7/2000 | 9 | Kwong, D | | 690 | UAR | MPC | 11/24/2007 | Parkside Station | |
| 203 | 10/24/2000 | 8 | Huang, ZH | | O73 | UAR | MPC | 11/24/2007 | Pacific Carrier Annex | |
| 204 | 11/18/2000 | 2 | Wong, ZH | | O39 | UAR | MPC | 11/24/2007 | EPC | |
| 205 | 11/18/2000 | 4 | De Guzman JR G | | O01 | UAR | MPC | 11/24/2007 | Golden Gate Station | |
| 206 | 4/13/2004 | 1 | Santos, SM | | O58 | UAR | MPC | 11/24/2007 | Golden Gate Station | |
| 207 | 1/22/2005 | 1 | Valle, A | | O62 | UAR | MPC | 11/24/2007 | Marina Station | |
| 208 | 2/19/2005 | 1 | Cardenas, JR | | O58 | UAR | MPC | 11/24/2007 | Golden Gate Station | |

**Total = 208**

SF UNASSIGNED CLERKS

4/15/2008

Exhibit D

 **UNITED STATES POSTAL SERVICE**

May 12, 2008

RODOLFO VELASQUEZ
XXX-XX-4179
Mail Processing Clk
Unassigned Regular
PL 381

SUBJECT:    **ASSIGNMENT OF UNASSIGNED REGULAR**

Effective Saturday, May 24, 2008, you will report to North Peninsula Delivery and Distribution Center at 1625 Rollins Rd., Burlingame, CA :

**Job # 95798286  Job Title: Mail Processing Clerk**
**Section: NPDDC T-1 OCR/BCS    PL: 142**
**Schedule: 2300-0730, Tue-Wed days off**

This action is taken in accordance with Article 37.4.C.5., National Agreement.

Carol A. Groteau
Manager , Personnel Service

cc: SMDO T- 3
        Manager, NPDDC
        In Plant Support
        Labor Relations
        APWU
        FILE

Exhibit E

AØ1.3Ø

PDAMØ356

JOB SLCTS
DISPLAY

JOB SLCT:   8522774
            TA93   SAN FRANCISCO PRCC/DIST CTR   CA
            TA93 Ø126    T-III UNASSIGNED REGULAR UNIT
            2315-ØØ63    MAIL PROCESSING CLERK
                    PS   Ø5

POSITION CLASSIFICATION:  CLERK
POSITION TYPE:  FULL TIME
DES/ACT:  11Z
        LEC:  14ØØ    TCUR:  3

FACILITY:  SAN FRANCISCO P & DC
WCRK AREA:  MANUAL LETTERS
SECTION:  SAPNO*281              PAY LOCATION:  38'_

STATUS:  VACANT
EFFECTIVE:  2ØØ7 Ø9 15
VACATED BY:  VELASQUEZ       RODOLFO

Exhibit F

BIDS & PROMOTIONS
SAN FRANCISCO DISTRICT


*UNITED STATES*
*POSTAL SERVICE*

April 28, 2008

ATTACHED IS A DRAC FORM AND PUB 316 FOR YOUR INFORMATION AND
GUIDANCE. SUBMIT YOUR COMPLETED REQUEST TO THE ADDRESS
BELOW:

**DISTRICT REASONABLE ACCOMMODATION COMMITTEE**
**P O BOX 885048**
**SAN FRANCISCO, CA 94188-5048**

BIDS & PROMOTIONS
RM 65 / SFP&DC

May. 21 2008 02:05PM  P1    FAX NO. :4155205640    FROM :PERSONNEL SERVICES

**District Reasonable Accommodation Committee**
**PO BOX 885048**
**San Francisco CA 94188-5048**

1.  ☐ I do wish to participate in an interactive to discuss a Reasonable

    Accommodation.


2.  ☐ I do not desire to participate in the interactive process.


**Publication 316 attached.**


**Employee Name:** _____

**Duty Station:** _____

**Supervisor Name:** _____

**Duty Hours:** _____


_____
**Employee (Signature)**


_____
**Date**



# Reasonable Accommodation in the U.S. Postal Service

A Guide for Employees and Applicants



 The Rehabilitation Act of 1973 applies to the Postal Service™ and prohibits discrimination against qualified employees and job applicants with disabilities. The Act also imposes an obligation on the Postal Service to find ways to accommodate a qualified individual with a disability where appropriate.

## Who Is Eligible for Protection Under the Rehabilitation Act?

To be protected under the Act, an individual must be qualified to perform the job and show that he or she is a person:

- With a disability;
- With a record of a disability;
- Responsible or caring for a person with a disability; or
- Regarded as having a disability.

## Who Is a Qualified Person With a Disability?

A qualified person with a disability is one who has a physical or mental impairment that substantially limits a major life activity, meets prerequisites (skills, experience, education, and other requirements) for the job the individual holds or desires, and can perform the essential functions of the position with or without reasonable accommodation.

## What Is a Physical or Mental Impairment?



A physical or mental impairment can include:

- Any physiological disorder or condition.
- Cosmetic disfigurement.
- Anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic, lymphatic, skin, or endocrine.



■ Any mental or psychological disorder, such as mental retardation or organic brain syndrome, and can encompass emotional or mental illness and some learning disabilities.

### What Is a Major Life Activity?

Generally, a major life activity is an activity of fundamental significance to most persons and not simply something important to a particular individual. A major life activity includes obvious functions such as hearing, seeing, walking, speaking, caring for self, performing manual tasks, and breathing.

### When Does an Impairment Substantially Limit a Major Life Activity?

An impairment substantially limits a major life activity when it either renders an individual unable to perform the major life activity or significantly restricts his or her performance when compared to an average person's performance of the same activity.

### What Is the Goal of Reasonable Accommodation?

The goal of reasonable accommodation is to enable individuals with disabilities to enjoy equal employment opportunity. The Postal Service requires the same performance standards and conduct of employees with disabilities as it does of other employees.

### Does Every Person With a Disability Require an Accommodation?

No. Many qualified individuals with disabilities are able to advance through the selection process and perform their jobs without any particular accommodation.

### How Do I Make a Request for Reasonable Accommodation?

If you are an employee and believe you are a qualified individual with a disability who requires accommodation in the application process (including a Postal Service exam), in your job, or in a job you



 seek, make your request orally or in writing to your supervisor or manager. If you are applying for Postal Service employment, make your request to the examiner, selecting official, or local manager of Human Resources. Explain the nature of your limitations and the accommodation you need. (This request can also be made by someone on your behalf.)

## What Are My Responsibilities?

If you believe that because of a mental or physical disability the testing process will be an artificial barrier to your demonstration of the knowledge, skills, and abilities required in the job, you are responsible for making your needs known as early as possible to the appropriate official. Request accommodation in advance by contacting the examination administration office, selecting official, or local manager of Human Resources. Similarly, if you are an employee bidding or applying for a job and need accommodation for the job desired or in some component of the selection process (application completion, interview, training), you are responsible for making your needs known to the examiner or local Human Resources manager. Request accommodation in enough time to allow for a timely decision.

If your disability is not obvious or already known, you may be required to provide documentation from an appropriate professional to clearly explain the nature and/or impact of the impairment, the need for reasonable accommodation, and/or to clarify how the requested accommodation may help you to perform the essential functions of the job. If the documentation provided is not sufficient, supplemental medical information may be required, including where appropriate, examination by a medical specialist of the Postal Service's choosing and at the Postal Service's expense.





## What Happens After My Request Is Made?

Your request for reasonable accommodation will activate an interactive process to determine whether you are a qualified individual with a disability who meets minimum qualifications. If so, essential functions of your job or the job for which you applied are identified, your abilities and limitations are considered, potential accommodations and their feasibility are identified, and the reasonableness of the accommodations is determined. Also considered are whether the accommodation would pose an undue hardship to the Postal Service and whether the accommodation would eliminate or reduce any direct threat of harm to you or others. You will be involved in this interactive process.

## When Will I Receive a Decision?

While expedited processing may be necessary to enable an individual to apply for a job or to participate in a specific activity scheduled to occur shortly, you will normally receive a decision from your manager or the examination administration office within 20 business days from the date of the request where the accommodation is simple and straightforward and no extenuating circumstances apply. In cases where substantiating documentation is required or where there are extenuating circumstances, you will be notified of the reason for delay and the approximate date on which a decision is expected.

## What Else Should I Know?

At the Postal Service's expense, a medical expert of the Postal Service's choosing may further review your medical documentation. In all cases, your medical records will be kept confidential.





### What Happens If My Request Is Denied?

You will be notified in writing of the reason for the denial and the name of the person or the office that made the decision. Further, if you are a qualified individual with a disability, you will be advised of your ability to participate in any informal dispute resolution processes, your right to file an EEO complaint, and any other appeal rights to which you may be entitled.

### Where Can I Get Additional Information About Reasonable Accommodation?

This material is intended as a general reference for information purposes. For detailed information see Handbook EL-307, *Reasonable Accommodation, An Interactive Process,* available in hard copy from your Human Resources Office and the Material Distribution Center. The handbook is also available online at two Postal Service Web sites: Intranet *(blue.usps.gov/cpim/)* and Internet *(www.usps.com).*

*The Postal Service is committed to building and maintaining an effective, diverse, and motivated workforce — a goal reinforced in the Postal Service's Transformation Plan.*

Publication 316, November 2005
PSN 7690-07-000-7707
© 2005 U.S. Postal Service
Cover Illustration © Jose Ortega/SIS

Exhibit G

**UNITED STATES POSTAL SERVICE**
*Reasonable Accommodation Committee*

Certified Mail-Return Receipt Requested: 7006 0810 0005 2662 7875

DATE:        May 22, 2008

FILE ID:     08-0522 RA

SUBJECT:     Accommodation Request/Referral
TO:          Rudolfo Velasquez
             58 Lobos Street
             San Francisco CA 94112-3020

Dear Mr. Velasquez,

The Reasonable Accommodation Committee (DRAC) is in receipt of a request/referral to discuss a possible accommodation that would enable you to perform the essential functions of your core duties. The DRAC will meet to discuss your request at the time and location indicated below:

Time: 10:30 AM
Date: May 28, 2008
Location: San Francisco P&DC
Address: 1300 Evans Ave, Room 299
San Francisco CA, 94188

The DRAC will review information available relative to your request. You are invited to attend and participate in the discussion. You should be prepared to discuss your medical condition, limitations and any reasonable accommodations you believe are appropriate. You may at your option be accompanied by your representative. If for any reason you are unable to attend and wish to reschedule, please contact me at (415) 550-5609 to make alternate arrangements.

*This meeting is conducted with a 4-6 person committee who will engage in an interactive process with you. They will ask you a series of questions related to your impairment. Your response will help them to determine if you are a qualified person with a disability that limits one or more major life activities such as hearing, seeing, walking, speaking, caring for self, performing manual tasks, and breathing. In addition the committee will determine if you qualify as an individual with a disability under the Rehabilitation Act of 1973.*

Your participation in this process is necessary for full and proper consideration of your request, and we look forward to meeting with you. I have enclosed Publication 316 for your review and so that you may gain an understanding of Reasonable Accommodation in the U.S. Postal Service.

Sincerely,

Coordinator
Reasonable Accommodation Committee

cc:  RAC File
     Postmaster/Manager